UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAUL MENDEZ,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF BOISE, a municipal corporation; DAVID BIETER; CITY OF BOISE COUNCIL; CITY OF BOISE PUBLIC WORKS DEPARTMENT; CITY OF BOISE LEGAL DEPARTMENT,<br><br>      Defendants. | Case No. 1:21-cv-00446-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION AND BACKGROUND

On November 15, 2021, Raul Mendez filed an Application to Proceed in Forma Pauperis (Dkt. 1) and a Complaint in the above-captioned lawsuit (Dkt. 2).

On March 21, 2022, the Court entered a unique 20-page order. Dkt. 4. In that order, the Court recounted Mendez's numerous lawsuits in the District of Idaho—some completed, some on appeal, some still pending. In particular, the Court noted that the above-captioned case deals primarily with matters that have already been adjudicated. *Id.* at 13–14. This case is not alone in that regard. As a result, the Court warned Mendez that he could be deemed a vexatious litigant, that a pre-screening order could be entered against him, or that other measures could be taken if he continued to file lawsuits on matters that had already been resolved and/or continued his pattern of prosecuting cases resulting in a drain on the District's resources, i.e., asking for reconsideration of every order, appealing

MEMORANDUM DECISION AND ORDER - 1

every order to the Ninth Circuit, etc.

The Court's purpose in writing this 20-page order was to be upfront with Mendez about where it stood on his lawsuits, to provide him sufficient warning and notice of prospective action it *could* take, and to make the record clear. The Court entered a copy of its order in those cases filed simultaneously with this case—cases 1:21-cv-00447-BLW and 1:21-cv-00448-DCN.

Ultimately, the Court told Mendez that before it would "review his application to proceed in forma pauperis [] and complaint *in this case*, [he] must explain why he should not be classed as vexatious, and why an order should not be entered curtailing any future lawsuits on sewer fees—a matter that has twice been decided." *Id*. at 19.

The Court gave Mendez 21 days in which to file a response. *Id*. at 20. On day 21, Mendez asked for a 90-day extension to file his response. Dkt. 5. The Court granted the motion, giving Mendez until July 11, 2022, to file his response to the Court's order. Dkt. 6. July 11, 2022, came and went. Eleven days later Mendez filed his response. Dkt. 7. While untimely, the Court will consider it.[1]

## II. ANALYSIS

### A. Mendez's Response to the Court's Order

In his response, Mendez spends a great deal of time discussing why the Court's

---

[1] Again, this frustrates the Court and is indicative of Mendez's litigation tactics. The Court granted an almost unheard of **90-day** extension to accommodate Mendez. Then Mendez completely blew through the extended deadline. He did not request another extension, nor did he explain in his response why his filing was almost two weeks late. Mendez appears to *expect* that the Court will simply accept his filings even when they do not conform with its prior orders. The Court wishes to address the merits of this claim and, as a result, will accept his late filing. However, the Court again warns Mendez that even as a pro se litigant, he is expected to follow all rules and orders of the Court.

order was improper, how it violated his due process, and why the order amounts to little more than bullying and intimidation. He claims the Court has a "blame the victim mentality," "sees Mendez as a troublemaker," and muses that the Court "perhaps [] wholeheartedly feels that people like Mendez are undeserving of equal protections under the law." Dkt. 7, at 18.

The Court will not address each of Mendez's arguments, but wishes to highlight a few matters for the record.

First, the Court's order was proper. The Court was warning Mendez. It was providing him an opportunity to take a step back and evaluate his litigation behavior—in this case specifically and in the District of Idaho as a whole. The Court took the time to review *all* of Mendez's federal lawsuits and explained the various courses of action the court *was considering*. Nothing about the order was improper. It was a warning meant to aid Mendez as he moves forward.[2]

Second, the Court's order does not violate Mendez's Due Process rights. The Court *has not* prohibited Mendez from filing lawsuits, it *has not* curtailed his access to the Courts, and it *has not* taken away any processes, procedures, or rights to which Mendez is entitled. The Court provided Mendez notice of where it stands. It followed the proscribed process as outlined by the Ninth Circuit. Nothing more.

---

[2] Mendez specifically takes issue with the Court entering this order in the two other cases filed contemporaneously with this action claiming the Court "d[id] not explain or justify" why a copy of the Order was simultaneously filed in those other cases. Dkt. 7, at 18. The Court did, however, explain precisely why it was entering the order from this case in the two other cases. First, like this case, those cases seek to litigate issues that have already been the subject of lawsuits by Mendez. Thus, the Court's analysis here is applicable to those cases as well. Second, as the Court noted: "having a comprehensive discussion [] of all Mendez's litigation to date will serve the District of Idaho in the future." Dkt. 4, at 6 n.2.

MEMORANDUM DECISION AND ORDER - 3

Third, the Court's order was not meant to intimidate or bully Mendez. Again, this order was a "shot across the bow" so to speak; a notice of caution to Mendez that he needed to carefully evaluate his decisions moving forward in respect to this case (and others). Critically, the Court *does not* feel Mendez is undeserving of equal protection under the law. As it stated previously: "like all parties who come before the District of Idaho, [Mendez] has enjoyed the Court's leniency and patience *and he will continue to receive the same.*" Dkt. 4, at 19. The Court is not trying to curtail Mendez's rights. It is simply trying to "secure the just, speedy, and inexpensive determination of [this] action and proceeding." Fed. R. Civ. P. 1. It may interest Mendez to know that the undersigned presides over 480 civil and criminal cases and is the only active Article III judge in the District of Idaho. Judge Winmill—who has previously presided over some of Mendez's cases, and is currently presiding over at least one of his cases—likewise has almost 500 cases even as a senior judge. The Court has dedicated *substantial* time and resources to Mendez's causes of action. It has always afforded him every right and process to which he was entitled. That his cases were all ultimately dismissed is not a reflection of the Court's ire towards him, but rather a reflection of the meritless nature of his lawsuits.

In sum, Mendez filed his response to the Court's order. He did not make any substantive arguments against a pre-screening notice. He laments that the Court is essentially out to get him, but provides little substance in support of his concerns. The Court has evaluated the matter and determined a pre-screening order is not necessary at this time. That option, among others, remains open should Mendez continue to abuse the legal system.

MEMORANDUM DECISION AND ORDER - 4

The Court turns next to this case in particular and will address Mendez's request to proceed in forma pauperis and screen his complaint.

### B. Application to Proceed in Forma Pauperis

"[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal . . . without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). In order to qualify for in forma pauperis status, a plaintiff must submit an affidavit that includes a statement of all assets he possesses and indicates that he is unable to pay the fee required. The affidavit is sufficient if it states that the plaintiff, because of his poverty, cannot "pay or give security for the costs" and still be able to provide for himself and dependents "with necessities of life." *Adkins v. E.I. DuPont de Numours & Co.*, 335 U.S. 331, 339 (1948). The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (cleaned up).

The Court has examined Mendez's application to proceed in forma pauperis and finds he has established his indigency. Mendez states that he spends what he makes and has assets of minimal value. Dkt. 1. Based on his circumstances, the Court finds good cause to GRANT Mendez's Application for Leave to Proceed In Forma Pauperis. The Court will waive the filing fee in its entirety.

### C. Sufficiency of Complaint

The Court is required to screen complaints that are brought by litigants who seek in forma pauperis status. *See* 28 U.S.C. § 1915(e)(2). The Court must dismiss a plaintiff's complaint, or any portion thereof, if it: (1) is frivolous or malicious; (2) fails to state a claim

upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i–iii). To state a claim upon which relief can be granted, a plaintiff's complaint must include facts sufficient to show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

During this initial review, courts generally construe pro se pleadings liberally, giving pro se plaintiffs the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Even so, plaintiffs—whether represented or not—have the burden of articulating their claims clearly and alleging facts sufficient to support review of each claim. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Additionally, if amending the complaint would remedy the deficiencies, plaintiffs should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

This Court is a court of limited jurisdiction and as such can only hear cases and controversies that involve a federal question (28 U.S.C. § 1331) or satisfy federal diversity jurisdiction requirements (28 U.S.C. § 1332). The Court will have original jurisdiction "of all civil action arising under the Constitution, laws, or treaties of the United States." *Id*. Additionally, the Court will have supplemental jurisdiction ". . . over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367.

Here, as mentioned, the Court is concerned primarily with the fact that Mendez is bringing what is, in essence, a third challenge for the same alleged conduct. In his response to the Court's order, Mendez explains that "res judicata does not bar a suit, even if it involves the same course of wrongful conduct as alleged earlier, so long as the suit alleges

MEMORANDUM DECISION AND ORDER - 6

new facts or a worsening of the earlier conditions." Dkt. 7, at 7 (citing *Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322 (1955)).

Mendez's argument is mostly accurate. His citation is also accurate. That said, Mendez needs to remember that while new facts or a worsening condition *could* justify a new lawsuit, the doctrine of res judicata (or claim preclusion) "bar[s] *all* grounds for recovery which *could have been* asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action." *Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980) (emphasis added).

This is a delicate balance. The Court is not entirely convinced res judicata *does not* apply in this case. That said, it will not dismiss this case sua sponte for that reason. If applicable, Defendants will no doubt raise the issue, and the Court can rule with a more developed record. Upon the current record, however, the Court determines Mendez has met his threshold burden. This case can proceed.

### III. CONCLUSION

Even though Mendez's response was tardy, the Court has considered the substance outlined therein. The Court has determined that it need *not* issue a pre-screening order against Mendez *at this time*. It wishes to reiterate, however, that Mendez should be cautious with his litigation tactics moving forward to ensure his lawsuits, motions, and general behavior is appropriate.

In this case, upon review, the Court GRANTS Mendez's request to proceed in forma pauperis and will waive the filing fee. Furthermore, while it has reservations about the Complaint in this case, the Court will allow Mendez to proceed with service upon

MEMORANDUM DECISION AND ORDER - 7

Defendants.

## IV. ORDER

1. Mendez's Application to Proceed in Forma Pauperis (Dkt. 1) is GRANTED. The Court waives the filing fee in its entirety.

2. Mendez may proceed with service of the Summons and his Complaint in accordance with applicable procedures.

DATED: August 23, 2022

David C. Nye
Chief U.S. District Court Judge